In the Matter of NEW YORK, NEW HAVEN and HARTFORD RAILROAD COMPANY et al., Petitioners.

STATE TAX COMMISSION, Respondent.

Third Department, June 30, 1943.

*Edward R. Brumley* (*A. G. Kuhbach* of counsel), for the petitioners New York, New Haven and Hartford Railroad Company and *Howard S. Palmer* and others as trustees, etc.

*White & Case* for the petitioner Bankers Trust Company.

*Nathaniel L. Goldstein, Attorney-General (Orrin G. Judd, Solicitor-General; Wendell P. Brown* and *Edward J. Gretchen, Assistant Attorneys-General* of counsel), for respondent.

SCHENCK, J. This is an application by petitioners for an order pursuant to the provisions of article 78 of the Civil Practice Act to review and annul the final determination of the State Tax Commission imposing a mortgage tax of $24,876, together with penalties thereon in the amount of $21,642.12, with respect to the issuance and sale of $27,121,000 principal amount of Series of 1927 bonds of the New York, New Haven and Hartford Railroad Company under its first and refunding mortgage and supplements thereto.

Heretofore and under date of December 9, 1920, the railroad executed and delivered to the Bankers Trust Company, as trustee, its first and refunding mortgage as security for certain prior indebtedness assumed by the railroad and for subsequent indebtedness to be evidenced by bonds issued thereunder. The mortgage was recorded on December 11, 1920. It was amended by supplements dated January 29, 1923, May 14, 1926, and December 1, 1927. Between December 11, 1920, the date of recordation, and November 30, 1927, the indebtedness secured by the mortgage amounted in the aggregate to $263,831,141.50. The mortgage tax imposed by article 11 of the Tax Law was paid in full on this aggregate amount of indebtedness so secured. Between 1921 and 1924, an item of prior indebtedness assumed evidenced by $400,000 of New Haven Station debentures was discharged. In 1922 and 1925 another item of prior indebtedness assumed evidenced by $27,582,691.50 of European Loan debentures was discharged. As a result of these reductions totaling $27,982,691.50, the total indebtedness secured by the mortgage amounted to $235,848,450.

On February 6, 1928, the railroad company executed and deposited $31,000,000 principal amount of Series of 1927 bonds effective December 1, 1927, with the trustee Bankers Trust Company which on that day delivered them to J. P. Morgan & Company, the purchaser, and at the same time the railroad filed with the Register of Westchester County a statement of advance covering the $31,000,000 of bonds in which it was claimed that $27,121,000 of the bonds was not subject to the mortgage recording tax. It was conceded that the balance, $3,879,000, was taxable and on this amount the tax was paid.

The sole question here presented is whether the mortgage recording tax imposed by article 11 of the Tax Law is payable with respect to $27,121,000 of the railroad's Series of 1927 bonds.

The railroad was indebted to the United States government in the amount of $22,734,092.33 upon promissory notes secured by collateral aggregating a total par value of $98,734,092.33. On February 7, 1928, the total amount of $22,734,092.33, representing the indebtedness to the government, was paid with Federal Reserve funds through checks of J. P. Morgan & Company and the evidences of the indebtedness and the collateral securing the same were surrendered to the railroad. Pursuant to the terms of the mortgage as amended by the third supplement, the railroad thereupon delivered to the trustee for cancellation Series A, B, C and D first and refunding mortgage bonds in the amount of $27,121,000. Petitioners claim that the mortgage recording tax is not payable with respect to $27,121,000 of Series of 1927 bonds as such bonds did not evidence an amount of indebtedness additional to the $263,831,141.50 secured by the mortgage or additional to the $235,848,450 remaining after the reduction in the amount secured by the discharge of the two items totaling $27,982,691.50 above referred to. Section 253 of the Tax Law imposes on each mortgage on real property situated within the State recorded on or after the first day of July, 1906, a tax of fifty cents for each $100 and each remaining major fraction thereof of principal debt or obligation which is or under any contingency may be secured at the date of the execution thereof or at any time thereafter by such mortgage. Section 259 of the Tax Law provides that in case of corporation trust mortgages to secure the payment of bonds or obligations issued or to be issued thereafter if the total amount of principal indebtedness which under any contingency may be advanced or accrued or which may become secured by such mortgage has not been advanced or accrued thereon or become secured thereby before such mortgage is recorded it may contain at the end thereof a statement of the amount which at the time of the execution and delivery thereof has been advanced or accrued thereon or which is then secured by such mortgage; thereupon the tax payable on the recording of the mortgage shall be computed on the basis of the amount so stated to have been so advanced or accrued thereon or which is stated to be secured thereby. The section further provides: " Whenever a further amount is to be advanced under the original mortgage, or shall accrue thereon

or become secured thereby, the corporation making such mortgage shall pay the tax on such amount at or before the time when such amount is to be advanced, accrues or becomes secured * * * and the certification of any bond or bonds by the trust mortgagee shall be deemed an advance under this article.''

Petitioners contend that the $27,121,000 of new Series of 1927 bonds did not create an indebtedness in addition to $235,848,450 remaining secured by the mortgage for the reason that $27,121,000 bonds of Series A, Series B, Series C and Series D were canceled at the time the new bonds in a like amount were issued. The Tax Commission contends that the remaining $27,121,000 Series of 1927 bonds constitute a new indebtedness secured under the supplemental mortgage or a further advance under the original mortgage and in either case a tax became due and collectible under article 11 of the Tax Law.

It would seem that the decisions in the first *Boston & Maine* case (*People* v. *Boston & Maine Railroad,* 202 App. Div. 54, affd. 234 N. Y. 629) and in the *Erie Railroad* case (*Matter of Erie R. R. Co.* v. *State Tax Comm.,* 260 App. Div. 268, affd. 284 N. Y. 673) are controlling here. The Series of 1927 bonds were not exchanged or substituted for the Series A, B, C and D bonds but were actually sold to J. P. Morgan & Company and the proceeds were used to pay the railroad's pre-existing indebtedness for which Series A, B, C and D bonds had been pledged as collateral and upon payment being made the previous indebtedness was extinguished and the Series A, B, C and D bonds were surrendered and canceled.

'' The new bonds did not go to the old bondholders. There was a new creditor, a new loan and a new contract relationship. The old noteholders and their debts were paid and those debts extinguished. The payment of one mortgage by a new agreement is taxable even though made with the same mortgagee. (*People ex rel. U. S. Title G. Co.* v. *Tax Comm.,* 230 N. Y. 102.) As there stated, 'there is a new transaction with a new tax.' The significant fact here is that there was a new debt for which the mortgage became security.'' (*Matter of Erie R. R. Co.* v. *State Tax Comm., supra.*)

While petitioners concede that the Series of 1927 bonds constitute '' new '' indebtedness, they argue that it did not create a '' further '' indebtedness. Section 255 of the Tax Law relating to supplemental mortgages exempts from liability for the mortgage tax certain supplemental mortgages, provided

they do not create or secure any " new or further indebtedness or obligation." From the reading of that section it is apparent that it is immaterial whether or not there is a " further " indebtedness provided it is a " new " indebtedness.

To agree with petitioners' argument that the recording tax is not payable with respect to the $27,121,000 of Series of 1927 bonds because such bonds did not evidence a further amount of indebtedness secured by the mortgage, it would be necessary to resort to a strained construction of the provisions of the Tax Law. Section 259 provides that " Whenever a further amount is to be advanced under the original mortgage, or shall accrue thereon or become secured thereby, the corporation making such mortgage shall pay the tax on such amount at or before the time when such amount is to be advanced, accrues or becomes secured and shall, at the time of paying such tax, file in the office of the recording officer where such mortgage has been or is first recorded and with the Tax Commission a statement, verified by the secretary-treasurer or other proper officer, of said corporation of the amount of principal indebtedness to be so advanced, accruing or becoming secured, and the certification of any bond or bonds by the trust mortgagee shall be deemed an advance under this article." After the certification and sale of the Series of 1927 bonds and the application of the proceeds to the payment of pre-existing indebtedness, the Series A, B, C and D bonds in the amount of $27,121,000 which had been pledged as collateral were returned and canceled and it appears that at the conclusion of the transaction the total amount of indebtedness secured by the mortgage remained the same as before the sale and cancellation. Nevertheless, the Series of 1927 bonds had first to be issued and secured by the mortgage and then sold. The tax liability is as of the time of certification and issue. " Furthermore the statute says that the certification of any bond or bonds shall be deemed an advance under this article. Such certification has been held to impose upon the trustee a personal liability for the payment of the tax." (*Matter of Erie R. R. Co.* v. *State Tax Comm., supra.*)

There may be found no provision of the statute which makes an exception in favor of bonds issued for the purpose of refunding an existing indebtedness. Again quoting from the *Erie* case: " This statute created a presumption that the 1927 issue constituted the advance secured by the mortgage * * * and the transaction itself admits of no other conclusion." At the time of their issue and certification the Series of 1927 bonds

were secured by the mortgage and supplemental mortgage in the sum of $27,121,000. At that same time the Series A, B, C and D bonds in a like amount were secured by the mortgage. It was only after the sale of the Series of 1927 bonds and the application of the proceeds of such sale to the payment of the pre-existing indebtedness that the cancellation of the Series A, B, C and D bonds was made possible. Apparently, the issue and sale of the new bonds and the cancellation of the Series A, B, C and D bonds were to occur as nearly simultaneously as possible; however, it was necessary to create a new debt before the old debt could be extinguished. As pointed out in the first *Boston & Maine* case (*supra*): " The parties to a mortgage may not by inserting therein appropriate provisions constituting the mortgage a security for a new indebtedness to take the place of the old evade the provisions of the Tax Law. The method adopted may be entirely appropriate for the purposes of the mortgagor but it should not be used as a device to escape taxation." Here, a new principal debt was created by the issuance and sale of the Series of 1927 bonds and the amount thereof was secured by the mortgage or supplement, and these bonds clearly come within and are taxable under the provisions of sections 253 and 259 of the Tax Law.

The determination of the State Tax Commission should be confirmed, with costs.

All concur.

Determination of the State Tax Commission confirmed, with costs.